UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHESTER NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 5033 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| VILLAGE OF LISLE and LISLE POLICE OFFICER JENNIFER MARQUEZ, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this action, Plaintiff Chester Nelson brings (a) false arrest and malicious prosecution claims against Lisle Police Officer Jennifer Marquez under the Fourth and Fourteenth Amendments to the United States Constitution and (b) a malicious prosecution claim against the Village of Lisle under Illinois law. Defendants have moved for summary judgment, and Nelson has moved to strike certain paragraphs of Defendants' Local Rule 56.1 statement of undisputed facts. For the following reasons, Marquez is entitled to summary judgment on the federal constitutional claims, the state law claim against the Village is dismissed without prejudice, and Nelson's motion to strike is denied as moot.

The following material facts are undisputed or not reasonably subject to dispute, or reflect Nelson's version of the relevant events; none of the facts is implicated by Nelson's motion to strike. On October 11, 2008, Chaunte Robinson dialed 911 and told dispatch that her ex-boyfriend had kicked in the door of her apartment. (Doc. 36 at 2, ¶ 10). The dispatcher provided the following information to Officer Marquez:

> It occurred at 597 Ogden, 5-9-7 Ogden, Apartment 4, the 17 is advising her
> ex-boyfriend kicked in her front door. He took off on foot, last seen
> heading towards the train. Last seen on foot heading towards the Metra.
> He is male black, 40's gray and black jacket with blue jeans. Male black
> 40's gray and black jacket with blue jeans. He does own a .38 caliber
> handgun; unknown if he has that with him. And he has made threats
> against the 17's life in the past.

(Doc. 42, ¶ 1). Marquez then went to Robinson's apartment, where Robinson reported "that my downstairs neighbor, whose name I believe is 'Rick,' told me that my boyfriend had kicked my door." (Doc. 36 at 6, ¶ 3). Robinson also told Marquez that she "believed that [she] had seen Chester Nelson running away from my building as [she] returned from the store." (*Id*. at 13, ¶ 9). While at the apartment, Marquez saw that the door had been kicked in, that there were wood splinters on the floor, and that the lock had been broken off the casing. (Doc. 32, ¶ 27 (citing Doc. 32-5 at 26, lines 3-5)). Shortly thereafter, Marquez spoke by telephone with Nelson and asked him to report to the police station in Robbins, Illinois, where Marquez placed him under arrest; Marquez later signed misdemeanor criminal complaints charging Nelson with criminal damage to property, criminal trespass to residence, and two counts of domestic battery. (Doc. 36 at 7-8, ¶¶ 10-15, 19). The charges ultimately were dismissed. (Doc. 42 at 4, ¶ 21).

Summary judgment is warranted on Nelson's false arrest claim. "Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed … an offense." *Ibid*.

At the time she placed Nelson under arrest, and based on the facts set forth above, Marquez possessed sufficient information to cause a prudent person to believe that Nelson had

committed criminal damage to property and criminal trespass to residence. From the dispatcher, Marquez knew that Robinson had reported that her ex-boyfriend had kicked in her door and that he had taken off on foot. Marquez then heard directly from Robinson (a) that a neighbor had told her that her ex-boyfriend had kicked in her door and (b) that Robinson saw Nelson running from the scene. Marquez also observed physical evidence of the damage. Because Marquez had probable cause to believe that Nelson had committed criminal damage to property and criminal trespass to residence, *see Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) ("we have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause"); *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) ("police officers are entitled to rely on the reasonable information relayed to them from a police dispatcher"), it is not necessary to determine whether Marquez also had probable cause to arrest Nelson for domestic battery. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause"). And because the arrest, as a matter of law, did not violate the Fourth Amendment, it also is unnecessary to reach Marquez's argument that she is entitled to qualified immunity. *See Jones v. Watson*, 106 F.3d 774, 781 (7th Cir. 1997).

Nelson submits that his false arrest claim survives because the Fourth Amendment prohibits a police officer from making a warrantless arrest for a misdemeanor offense not committed in the officer's presence. As Nelson candidly (and admirably) recognizes, however, binding Seventh Circuit precedent forecloses that submission. *See Woods*, 234 F.3d at 992-95 (holding that the Fourth Amendment does not incorporate the common law "in the presence"

rule for misdemeanor arrests) (citing cases); *see also Moton v. Protine*, 2004 WL 609312, at *6 (N.D. Ill. Mar. 25, 2004).

Marquez also is entitled to summary judgment on Nelson's federal malicious prosecution claim. The Seventh Circuit repeatedly has held that a plaintiff may bring a malicious prosecution claim under the federal constitution only if "the relevant state's law does not provide … a way to pursue such claims," that Illinois law "recognizes tort claims for malicious prosecution," and therefore that a plaintiff alleging malicious prosecution in Illinois may not bring a federal malicious prosecution claim under 42 U.S.C. § 1983. *Ray v. City of Chicago*, ___ F.3d ___, No. 09-3719 (7th Cir. Jan. 5, 2011), slip op. at 7-8; *see also Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir. 2009). These precedents defeat Nelson's federal malicious prosecution claim.

That leaves Nelson's state law malicious prosecution claim against the Village. Because Nelson and the Village are not diverse, both being Illinois citizens, only supplemental jurisdiction lies over that claim. *See* 28 U.S.C. § 1367(a). But because summary judgment has been granted against Nelson on all his federal claims, the court in its discretion may decline to exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—the district court has dismissed all claims over which it has original jurisdiction"); *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999) ("it is the well-established law … that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993).

The court opts for that course here. As an initial matter, substantial federal judicial resources have not yet been committed to Nelson's state law claim. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). While it would be simple enough to grant summary judgment to the Village on Nelson's malicious prosecution claim as it pertains to the criminal damage to property and criminal trespass charges—Illinois law makes probable cause to believe that the plaintiff committed a crime an "absolute bar" to malicious prosecution for charging the plaintiff with that crime, *Holmes*, 511 F.3d at 682—that finding alone would not preclude Nelson from proceeding on his claim as it pertains to the domestic battery charges. *See ibid.* (distinguishing false arrest claims from malicious prosecution claims, in that "probable cause to believe an individual committed one crime … does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge"). The facts regarding the domestic battery charges are less than clear, as the dispatch call received by Marquez reported threats but not an actual battery, and the parties dispute whether Robinson told Marquez that Nelson physically struck her. This lack of clarity provides another reason to decline to exercise supplemental jurisdiction over the state law claim. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994). Illinois law gives Nelson one year to refile his state law claim in state court. *See* 735 ILCS 5/13-217; *Davis*, 534 F.3d at 654.

For the foregoing reasons, Defendants' summary judgment motion is granted as to Nelson's federal claims, and Nelson's state law claim is dismissed without prejudice for want of subject matter jurisdiction. Because this disposition does not implicate any of the disputes raised in Nelson's motion to strike portions of Defendants' Local Rule 56.1 statement, that motion is denied as moot.

January 11, 2011

_____
United States District Judge